IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        No: 1:15cr225

 vs.

OLUSINA OLUFEMI OLAJIDE,

        Defendant.


Before:

           THE HONORABLE PHILLIP GREEN
            U.S. Magistrate Judge
            Grand Rapids, Michigan
             May 13, 2016
            Plea Proceedings

APPEARANCES:

        MR. PATRICK MILES, U.S. ATTORNEY
        By:  MR. CLAY WEST
        The Law Building
        330 Ionia Avenue, NW
        Grand Rapids, MI 49501-0208
        616-456-2404

            On behalf of the Plaintiff;

        MR. LUCAS XAVIER DILLON, SR.
        The Law Office of Lucas X. Dillon
        204 S. Cochran Avenue
        Charlotte, MI 48813
        517-997-3075

            On behalf of the Defendant.


TRANSCRIBED BY:  MS. KATHY J. ANDERSON, RPR, FCRR

May 13, 2016

PROCEEDINGS, 9:09 a.m.

THE COURT:  We're here in the matter of the United States versus -- and I apologize in advance I'm probably going to botch your name, sir -- but Mr. Olusina Olufemi Olajide, case number 15cr225.  Could I have appearance of counsel, please.

MR. WEST:  Good morning, Your Honor.  Clay West for the United States.

THE COURT:  Good morning, Mr. West.

MR. DILLON:  Good morning, Your Honor.  Lucas Dillon on behalf of my client, Olusina Olufemi Olajide.  He is present and seated to my left.

THE COURT:  Thank you.  And thank you for pronouncing his name correctly.  I wish I could say I was prepared to do the same.

Mr. Dillon, it's my understanding that your client has expressed an interest in a change of plea to plead guilty to Count I of the indictment, is that correct?

MR. DILLON:  That is correct, Your Honor.  And if I could place a plea agreement on the record at this time.

THE COURT:  Yes, please do.

MR. DILLON:  Thank you.  In exchange for my client entering a plea to Count I, the government has moved, will move to dismiss Counts II and Count III, if that's a correct

statement.

THE COURT:  All right.  Is there any other agreement or promise that the government has made, Mr. Dillon?

MR. DILLON:  No.  We have had discussions about bond but there has been no agreement as to any type of bond my client will receive today.  Mr. West knows I'll be making that motion.  That does not --

THE COURT:  Very well.  But in terms of inducing the plea, the only promise that Mr. Olajide --

THE DEFENDANT:  It's close.

THE COURT:  I don't want to be close.  I want to be spot on.  Mr. Dillon, can you help me one more time?

MR. DILLON:  I say Olajide.

THE COURT:  Okay.  Thank you.  I just want to make sure that it's clear that we put on the record any promise or inducement that Mr. Olajide has received for purposes of just entering the plea.  And what I hear you say, Mr. Dillon, is that the only promise that he is relying upon is that the government has agreed that it will dismiss Counts II and III at the time of sentencing, is that correct?

MR. DILLON:  Correct, Your Honor.

THE COURT:  Mr. Olajide, do you believe that there is any other promise?

THE DEFENDANT:  No.

THE COURT:  Made to you.  All right.  Mr. West, do you

agree with that?

MR. WEST:  I agree, Your Honor.

THE COURT:  All right.  Very well.  We will proceed.

Mr. Olajide, there are a number of things I need to go over with you this morning before I can take a guilty plea. I'm going to be discussing with you your rights, the nature of the charge that you've expressed interest in pleading to, and the penalties and ramifications of pleading to that charge. Before I do that I need to make sure that you are of a frame of mind to be able to do two things:  One, to think clearly, and two, so you can understand what's happening here, and what I'm saying, but secondly, that you're able to make what may be one of the more important decisions of your life.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Is there anything physically or mentally wrong with you that affects your ability to think clearly?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you taking any prescription medication?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  What are you taking can you just kind of give me an idea of the types of medication you take?

THE DEFENDANT:  One is for blood pressure, another one is for HIV.

THE COURT:  Okay.

THE DEFENDANT:  The other one is for my prostate, to make it be able to be well.  Those are the only three.

THE COURT:  All right.  Is there anything about any of the medications you're taking or a combination of which that causes you difficulty in thinking clearly?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  How far did you get in school?

THE DEFENDANT:  As --  master's degree.

THE COURT:  Wow.  Okay.  Good.  You seem to speak English very well.  Do you also read and write English?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Thank you.  Mr. Dillon, do you have any reason to believe that Mr. Olajide is not competent to proceed this morning?

MR. DILLON:  No, Your Honor.  Last night we went over what the Court is going to be going over the Rule 11 today, as well as the indictment, as well as the plea, spent about an hour in Newaygo, and he fully understands what's going on today.

THE COURT:  Thank you, sir.  All right.  Mr. Olajide, one of the things I want to make clear to you at the outset is that you have a right to have the district court judge conduct this plea hearing.  The district judge assigned to this case is Judge Janet T. Neff.  She's appointed by the President of the

United States, and she serves a lifetime tenure.  I'm a United States Magistrate Judge.  I work for the district judges.  It is permissible for me to handle this case but only if you and the government agree.  Do you agree to me handling this hearing this morning?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Dillon, has he signed the consent?

MR. DILLON:  He has, Your Honor.

THE COURT:  Mr. West, does the government agree?

MR. WEST:  Agree.  We agree, Your Honor.

THE COURT:  All right.  Thank you.  The second thing I want to make clear to you today, Mr. Olajide, is that nothing that I say here this morning should be taken as an indication of what I think you should do.  I'm neither trying to talk you into pleading guilty nor am I trying to talk you out of it.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  My job this morning is to make sure that if you plead guilty that you do it with your eyes open, meaning that you understand all of your rights, that you understand the nature of the charge that you're pleading guilty to, and that you understand all the consequences and ramifications of pleading guilty.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If at any point during the proceedings

you're not sure you understand what's going on or you have a question or a concern, I want you to raise your hand. Will you do that for me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. You have a right to the assistance of an attorney throughout the proceedings in your case, no matter how you choose to proceed, whether you plead guilty, or you go to trial. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If you can't afford an attorney, the Court will appoint one for you at no cost to you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Mr. Dillon, are you appointed?

MR. DILLON: I am, Your Honor.

THE COURT: Mr. Dillon has been appointed by the court to represent you. He's a very fine criminal defense attorney or he wouldn't be on the panel for appointment. Are you satisfied with his representation so far?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, do you understand, Mr. Olajide, that if you go to trial, Mr. Dillon will continue to represent you at that trial and he will give you his very best efforts. Is that understood?

THE DEFENDANT: Yes, Your Honor.

THE COURT:  Therefore, any concern that you might have about whether you would be adequately represented at trial should play no part in any decision to plead guilty.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You also have the right to remain silent. You have no obligation to speak to anyone from the government, anyone in law enforcement, or anyone else for that matter.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you do make a statement what you say may be used against you in a later court proceeding.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you plead guilty this morning, you'll be giving up your right to remain silent.  Not only will you give up that right, but you'll be placed under oath subject to the penalties of perjury, and I will be asking you questions that will require you to incriminate yourself in that I will be asking you what you did that makes you believe that you're guilty of Count I in the indictment.  Do you understand that?

THE DEFENDANT:  Yes.  Yes, Your Honor.

THE COURT:  Is it still your intent to plead guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Could we place Mr. Olajide

under oath, please.

OLUSINA OLUFEMI OLAJIDE, DEFENDANT, WAS DULY SWORN

THE DEFENDANT:  So help me God is the truth.

THE COURT:  All right.  Mr. Dillon, I believe Mr. Olajide has been arraigned on this count, is that correct?

MR. DILLON:  That is correct, Your Honor.

THE COURT:  All right.  Thank you.  Mr. Olajide, I want to make sure that you understand what you're charged with in Count I.  According to the grand jury, it alleges that on December 19th of 2011, and that this occurred in Ingham County, that you, being an alien from another country, knowingly made a false statement that you were a citizen of the United States in order to vote in an election; and that you falsely claimed that you were a United States citizen when registering to vote with the office of Secretary of State for the State of Michigan. This is a violation of Title 18 United States Code Section 1015(f).  Do you think you understand what you're accused of in that count?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. West, can you help me out to be clear here.  What are the elements of this offense that the government would have to prove?

MR. WEST:  Absolutely, Your Honor.  By the statute, the elements are that Mr. Olajide, one, knowingly, two, made a false statement that he was a citizen of the United States, and

three, he did so in order to vote in a federal, state or local election.  Now there are two other remaining, I guess I would call sub elements, Your Honor.  One, it's not an express element, but that he's an alien, which of course is why it is a false statement that he was a U.S. citizen.  And secondly, the venue portion which occurred in Ingham County Western District of Michigan on December 19, 2011.

THE COURT:  All right.

MR. WEST:  And if it would assist the Court on a factual basis, Your Honor.  I do have the actual signature form that was signed at the time of the --

THE COURT:  When we get to that it may be helpful. Thank you.  Mr. West, am I correct in understanding that Section 1015(f) of Title 18 does not in and of itself require a showing that the person making the statement is an alien?

MR. WEST:  That is correct, Your Honor.  That's not within there.  Basically.  But it requires that it be a false statement that they were a U.S. citizen.

THE COURT:  In this case it happens to be that the alleged false statement was that he was a U.S. citizen when he was not.

MR. WEST:  Right.

THE COURT:  All right.  Thank you.  Mr. Dillon, do you agree with Mr. West's explication of the elements of this statute?

MR. DILLON:  I do, Your Honor.

THE COURT:  All right.  Thank you.  And Mr. Olajide, again, do you think you understand these elements?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  If you are convicted of Count I, which you will be if you plead guilty, you face a maximum penalty of five years imprisonment and a fine of $250,000; you would be required to pay a hundred special assessment; and you would be subject to a period of supervised release of up to three years.  Supervised release is a period of time following incarceration in which an individual is subject to certain terms and conditions set by the sentencing judge.  If he or she violates any term or condition, he or she could be returned to prison for up to the full term of supervised release.  In some instances that could result in an individual spending more time in prison than what was allowed as the maximum penalty for the offense of conviction.

You understand these penalties?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In addition to that, you may be deported, denied U.S. citizenship, or readmission to this country in the future.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  In 1984 the Congress of the United States passed a law called the Sentencing Reform Act.

That statute did a number of things, one of which was to create what is known as the United States Sentencing Commission.  The Sentencing Commission is charged with developing and maintaining the Federal Sentencing Guidelines.  They produce a manual every year with the latest edition of the Federal Sentencing Guidelines provisions.  I'm sure that Mr. Dillon has discussed with you the Federal Sentencing Guidelines.  Is that correct?

THE DEFENDANT:  Correct.

THE COURT:  All right.  Well, that's perfectly appropriate for him to do that.  I want to make sure that you understand in general terms how the Federal Sentencing Guidelines work.

If you plead guilty, then Judge Neff will have to decide your sentence.  In that process she needs to first determine what your Federal Sentencing Guidelines range is.  That process is essentially a two-part process.  The first part is to determine the offense, what's known as the offense level.  That's a number.  That begins with what's known as a base offense level, a number that is linked to the offense of conviction.  Judge Neff will then have to determine whether there are any aggravating factors or mitigating factors in your case.  An aggravating factor is something that goes against you that would increase that number, a mitigating factor is something in your favor that would reduce that number.  I don't

know what your base offense level may be.  I certainly don't know whether there are any aggravating or mitigating factors here.  But let me give you a hypothetical example of how this works.

Let's assume that johnny Smith pleads guilty to distributing heroin.  Okay.  And so he will have a base offense level that's linked to the offense of distributing heroin.

THE DEFENDANT:  Right.

THE COURT:  If johnny Smith used a gun or possessed a gun during the course of the commission of the crime, then the guidelines, there is an aggravating factor, an increase of two levels for possession of a firearm.  That's an example of an aggravating factor that would increase johnny Smith's offense level.  An example of a mitigating factor, something in johnny Smith's favor is that if he pleads guilty and if he's otherwise eligible for what's known as acceptance of responsibility, then the sentencing judge can reduce that offense level by at least two levels.  And if his adjusted offense level is 16 or greater, and if the government asks the sentencing judge to give a third level, then the sentencing judge can reduce the offense level by up to three.  Do you follow me?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Once Judge Neff determines your base offense level and whether there are any aggravating or mitigating circumstances, she will come to a final calculation,

a final number for your offense level.  Once she's done that, she will need to determine what criminal history category you fall into.  There are six criminal history categories.  If you have no prior criminal convictions, then you're automatically in Category I.  If you have any prior convictions, then points will be assessed on each depending upon the nature of the conviction, how old it is, and what sentence you received.  Once those points are added up, then Judge Neff will know which of the six criminal history categories you are in.  Once she knows that, she will turn to a table much like the one I'm showing you now which is in the inside cover of the guidelines manual, she will go down vertically to your offense level, across horizontally to your Criminal History Category, and that will tell her what your guidelines range is which is always a range of months.  Do you think you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Now, while Judge Neff is required by law to accurately calculate your Federal Sentencing Guidelines, she is not obligated to sentence you within those guidelines.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If Judge Neff sentences you above the guidelines range, that is not a basis for you to withdraw from your plea.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, has anyone told you that they know for a fact what sentence Judge Neff will give you?  Has anyone told you that they know for a fact what guidelines range Judge Neff will determine you fall into?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Well, that's good because no one can possibly know that.  Judge Neff doesn't even know that at this point.  She doesn't have the information she would need to have and review before she could make those decisions.

Now, if you plead guilty, Mr. Olajide, the probation department is going to prepare what's known as a presentence report.  That report will contain a great deal of information: Information about your background, about the offense of conviction, about any criminal history that you may have; it will also include recommendations of the probation department concerning which of the Federal Sentencing Guidelines provisions apply in your case.  A copy of the initial report will be given to Mr. Dillon who will share it with you, you and he will have an opportunity to review it and to make suggestions as to changes to that report, to correct anything that you think is factually inaccurate, to add anything that you think should be added, or to take something out if you think it shouldn't be in the report.  You'll also have an opportunity to make objections to any of the recommendations about guidelines provisions that the probation department

intends to make.

Mr. Dillon will then have the opportunity along with counsel for the United States to sit down with the probation officer and to discuss their views.  If Mr. Dillon is successful in convincing the probation officer to make the changes you and he think should be made, then that's good for you.  If he's not successful, you can still raise those issues with Judge Neff.  Ultimately, Judge Neff and only Judge Neff can decide issues relating to your potential sentence.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you fail to raise an issue with Judge Neff at or before the time of sentencing, you may forever lose the right to raise that issue.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Now, the other thing Congress did in 1984 was to abolish what's known as parole.  In the state system if someone is convicted of a crime, then he or she receives what's known as a range sentence or an indeterminant sentence, for example, five to ten years.  After the person has served the minimum part of the sentence, they are generally eligible for parole which is release from prison prior to the completion of the full sentence.  There is no parole any more in the federal system.  Accordingly, if you are, if you plead guilty and if you're sentenced to prison, you should expect to

serve the entire sentence minus any credit for time served, for good time served as computed by the Bureau of Prisons.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, you have a right to appeal certain issues relating to your conviction and sentence.  Mr. Dillon can explain to you all the issues that you can appeal, he can explain to you the process for taking an appeal, and the time deadlines for filing a notice of appeal.  Very important, Mr. Olajide, that if you wish to appeal anything relating to your conviction, should you go ahead with your plea, or your sentence, that you file a notice of appeal within the deadlines or you may lose the right to appeal.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is Mr. Olajide currently on probation or parole, Mr. Dillon?

MR. DILLON:  He is not.

THE COURT:  All right.  Thank you.  Mr. Olajide, you may also, I'm not sure whether this would apply to you if you are not a U.S. citizen at this point anyway, but I'm going to explain to you anyway that someone who is convicted of a felony in this country may be denied certain other civil rights that they might otherwise have.  For example, the right to vote, the right to hold office, the right to serve on a jury, and the right to possess firearms.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, a not guilty plea was entered on your behalf as to each of the counts in the indictment.  And you have a right to persist in that --

MR. WEST:  Excuse me, Your Honor.  He is pleading just to Count I.

THE COURT:  I understand that.  I'm about to explain to him his rights of going to trial.

MR. WEST:  Oh, I'm sorry.  I thought I heard you say a not guilty plea --  oh, I'm sorry.  I misheard you.

THE COURT:  Yes, he entered a not guilty plea as to the charges in the indictment.

MR. WEST:  Excuse me.

THE COURT:  That's fine.  I always want people to catch me if I'm making a mistake.  Don't worry about that.

But, Mr. Olajide, what I want you to understand now is if you decide not to plead and you wanted to go to trial -- you've entered a not guilty plea as to each of the charges in the indictment -- and you have a right to persist in that not guilty plea, and to go to trial, and if you go to trial there are certain rights that go along with going to trial that I want to make sure that you understand.

First you have a right to a trial by jury; you have a right to be represented by counsel, Mr. Dillon, as I said before, would represent you to his very best ability.  You have

the right to have at least 30 days to prepare for that trial; you have a right to confront and cross-examine any witness the government calls against you; you have a right to present evidence on your own behalf, including calling witnesses, although you have no obligation to do that; if you wanted to call a witness and the witness was unwilling to come voluntarily, the Court would order them to appear; you have a right not to incriminate yourself at trial.  And that means that if you chose to go to trial, and if you chose not to testify, first of all, no one could force you to testify. Secondly, Judge Neff would explain to the jury that it could not hold it against you that you didn't testify.  On the other hand, you have a constitutional right to testify and no one could stop you from testifying.

You are presumed innocent of all three charges in the indictment, and you remain under that presumption unless and until the government proves you guilty beyond a reasonable doubt.  And Judge Neff would tell the jury that as well.

Do you think you understand all these rights that are associated with trial?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Now, other than the right to counsel, which you will keep no matter which way you go, you'll be giving up all those rights as there will be no trial.  All that will be left is for Judge Neff to decide your sentence.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Has anyone threatened you to get you to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Is anyone putting any pressure on you to get you to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone made any promise to you other than the government's promise to dismiss the other charges if you plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Is your decision to plead guilty yours and yours alone?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you think you have had enough time to think about it and to discuss it with Mr. Dillon?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  We're now at the point where you have to make the final decision.  Before I ask you how you plead to Count I I'm going to ask one last time if you understand all the rights I have explained to you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand the nature of the charge in Count I?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand all the penalties and consequences of pleading guilty to this charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  In that case, Mr. Olajide, how do you plead to Count I charging you with making a false statement regarding U.S. citizenship in an application to vote?

THE DEFENDANT:  Guilty.

THE COURT:  All right.  In federal court, Mr. Olajide, we can not accept a guilty plea except if we are satisfied that the person is in fact guilty.  So I need to make a factual basis to support your guilty plea to Count I.  So let me ask you, I'm going to direct your attention to December 19th, 2011, the date in Count I.  This says that you made an application to vote.  Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Where did you go to do that?

THE DEFENDANT:  It would be Delphi Charter Township in Holt, Michigan.

THE COURT:  All right.  Did you go to a Michigan Secretary of State office?

THE DEFENDANT:  Yes.

THE COURT:  At that location?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And what kind of a form did

you fill out?

THE DEFENDANT:  It's the form they give you before you, you get your license.

THE COURT:  Your driver's license?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Were you there to get a driver's license?

THE DEFENDANT:  Renew.

THE COURT:  To renew it.

THE DEFENDANT:  Yes.  No, to change my address.

THE COURT:  Okay.  All right.  To change your address on your driver's license.

THE DEFENDANT:  Yes.

THE COURT:  While you were there on that occasion, did you also ask for a form to register to vote?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And did they provide you with a form for that purpose?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And you understood that that form was to be used so that you would be able to vote in an upcoming federal, state or local election?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Now, did that form, on that form did it have a question as to whether you were a United States

citizen?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  What did you indicate on the form with respect to that question?

THE DEFENDANT:  I indicated yes on the form.

THE COURT:  All right.  Were you a United States citizen at that time?

THE DEFENDANT:  No.

THE COURT:  Okay.  Did you know that you were making a false statement on that form at that time?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you understand that if you had indicated on that form that you were not a U.S. citizen, that you would not have been allowed to vote?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Is it the case that you made the false statement knowing it was a false statement so that you would be allowed to vote, is that fair to say?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. West, is there anything else you would like to address?  I know you have the form there.

MR. WEST:  Your Honor, the Court has covered the elements.  There is nothing else I need to add.  I have given another copy of the actual form to Mr. Olajide to have in front of him today.  And if the Court would like to see the form,

it's here.  But the elements have been covered.

THE COURT:  All right.  Thank you, Mr. West.  So you're satisfied we have a factual basis.

MR. WEST:  That is correct, Your Honor.

THE COURT:  Mr. Olajide, Mr. West has represented that he has given you a copy of the actual form that we have been talking about.  Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And is the form that Mr. West provided to you a true and accurate copy of the one you filled out on December 19th, 2011?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Thank you.  Mr. Dillon, are you satisfied we have a sufficient factual basis?

MR. DILLON:  I am, Your Honor.

THE COURT:  Is there anything else you would like to cover in the plea hearing, Mr. Dillon?

MR. DILLON:  Not for the plea.  I do want to address bond, Your Honor.

THE COURT:  We will do that.  Thank you.  I find that Mr. Olajide understands the nature of the charge in Count I and the penalties provided by law; I find that his plea is made knowingly, with full understanding of each of the rights I have explained to him; I find that his plea is voluntary, free of any force, threats or promises apart from the single oral

promise of the United States that it will dismiss Counts II and III at the time of sentencing; I find that Mr. Olajide's plea has a sufficient factual basis.

Mr. Olajide, I will be issuing a report and recommendation today to Judge Neff recommending to her that she accept your guilty plea.  If she accepts your guilty plea, you will be adjudicated guilty at that point.  You would be convicted of this offense at that point.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You have 14 days to file an objection to my report and recommendation.  If you wish to do that, Mr. Dillon knows how to do it and he would be happy to do it for you.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Judge Neff's case manager will be scheduling a sentencing hearing in your case probably in about, for about three months out.  And that time is to allow the probation department an opportunity to conduct a presentence investigation, to write the report, to give you and Mr. Dillon an opportunity to review it and provide input to it.  We want to make sure, Mr. Olajide, that by the time Judge Neff decides your sentence, she has all the information she needs to make a decision as to what is a fair and just sentence in your case. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions or concerns of me at this point?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Mr. Dillon, I will hear you on the issue of bond.

MR. DILLON:  Thank you, Your Honor.  We were here on March 23rd for my client's arraignment, and at that time he did not, was not able to provide me with an address.  Since that time I have located his girlfriend, Ms. Sherry King.  She lives in Detroit.  I have had three separate conversations with her.  She's agreed to be here today at 10:00 o'clock a.m. to pick Olusina up and essentially allow him to stay with her while he would be on bond.  That is in Detroit, and she has agreed to provide transportation to and from court for his PSR report, as well as for sentencing.

The reason that I need him out pretty much immediately is that at the date of arraignment I placed on the record that he did, I don't believe I said he had HIV, but I did say he had prostate cancer and needed that to be looked at.  He then was transferred to Newaygo, I believe it was two weeks later.  He was then at the hospital here in Grand Rapids.  He had fluid on his brain.  He had multiple problems.  He was not able to go to the bathroom.  He has since stabilized.  I went and saw him at the hospital.  He was stabilized at that point.  And he has

medical equipment attached to him today that needs, requiring checkups.

The medical care that he received at Newaygo, as kind as they are to me, I don't know if it was the best.  There is an ongoing Michigan State Police investigation as to his care at Newaygo.  I think at this time everyone, including Newaygo, would like to have him out and receiving medical care on his own terms.  And I think based on what he's charged with, based on his health, and based on his availability to come and go from court, I think the Court can very easily give him an unsecured bond.  He will be returning.  That's all I have.

THE COURT:  All right.  Thank you, Mr. Dillon. Mr. West.

MR. WEST:  Thank you, Your Honor.  And before I start the bond issue explicitly, I will note that the U.S. Attorney's office does not oppose, whether it be expedited or modified, there are several variations of PSR that can be generated in this case, and the base offense level is low in this one; it may be a bit more complicated on the criminal history side, but to the degree that the probation office is able to accelerate and feels comfortable accelerating the creation of the PSR, the government does not oppose that.  So that's a baseline.  That may weigh somewhat into the bond issues.

The government has been made aware of certain medical issues that occurred while at Newaygo that did require the

hospitalization of Mr. Olajide.  I have been in frequent contact with Mr. Dillon and the marshal's office regarding the medical condition of Mr. Olajide.  And I'm happy to report that while we had no good address at the time of the initial arraignment in this case, the government is comfortable with the address of the, of the female friend of Mr. Olajide in this case, and the government does support bond.

In large part there was a risk of flight concern at the beginning of the case.  I think now that we have a stable residence, albeit it out of the district, but adjoining district, and due to Mr. Olajide's medical conditions that are difficult frankly to treat at Newaygo, I think it is appropriate in this case that the concerns the government initially had on risk of flight are ameliorated and bond is appropriate in this case.

Lastly, just for the record, I would note, Your Honor, when we did the arraignment there were two different retainers that were filed in this case.  One is by immigration, an ICE detainer, and the second by the U.S. Army, a desertion detainer.  I will note we have coordinated on both detainers such if the Court does grant bond today, the Homeland Security agents who are in the room today will take him to their office here in Grand Rapids, won't require a trip to Detroit, and settle the immigration detainer with respect to a bond on that front.  As to the U.S. Army detainer, they were notified of our

plans two days ago with respect to a bond, and it's my understanding, while we don't have an affirmative response yet, that essentially they have declined to enforce a detainer at this time.

So we think that bond at least with this court and the immigration court, it is appropriate to go forward, notwithstanding the fact that that detainer is still open and that will probably have to be addressed down the road.

THE COURT:  All right.  Thank you.

MR. WEST:  Thank you, Your Honor.

THE COURT:  You anticipated my question.  I was curious about the detainer issue.  I don't want -- I don't want to release him on bond only to be picked up on immigration or an army hold.  Then he is not getting any credit.

MR. WEST:  That is correct, Your Honor.  And I believe immigration we have negotiated and it will be resolved this morning.  And the army one will not, certainly unless Mr. Olajide commits a new offense that requires a run of detainers in a new area, I don't think that will be an issue in the short term.

THE COURT:  All right.  Thank you, Mr. West. Mr. Dillon, can I ask you to tell me again what is the address where he would be living?

MR. DILLON:  19196 Westmoreland.

THE COURT:  That's two words, Westmoreland?

MR. DILLON:  Correct.

THE COURT:  Like the general.

MR. DILLON:  Two words.

THE COURT:  What city is that in?

MR. DILLON:  Detroit, Michigan.  I don't have the zip.

THE COURT:  I don't need the zip.

MR. DILLON:  Thank you, Your Honor.

THE COURT:  I know where Detroit is.  And what is the relationship with this person with whom he will be living?

MR. DILLON:  Sherry King is his girlfriend.

THE COURT:  Okay.  Is there anyone else living in that home?

MR. DILLON:  I believe there is a child.

THE COURT:  All right.  Are there any firearms or weapons in that home?

THE DEFENDANT:  No.

MR. DILLON:  No, Your Honor.

THE COURT:  Okay. All right.  Thank you, Mr. Dillon. I am going to grant defendant's request to be released on bond. I note at the outset that there was no detention hearing held in this case; he waived at that time the hearing.  I'm allowing him to withdraw that waiver which allows us to reopen the issue, particularly in light of the absence of any objection on the part of the government.

I am going to release you, Mr. Olajide, on an

unsecured bond in the amount of $25,000. That means you don't have to put up any money at this time, but if you fail to appear for any future court hearings, you will be required to forfeit $25,000. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Let me ask you, Mr. West. Do you see any reason why Mr. Olajide should be supervised by pretrial services at this point?

MR. WEST: No, Your Honor.

THE COURT: All right. Thank you. That makes it a little easier. I'm a little reluctant to place someone on bond with supervision without having given pretrial services an opportunity for input.

So yours will be an unsupervised bond, Mr. Olajide, which means you will not have to report to pretrial services. But I am going to make a condition of your bond that you live with your friend at the address that Mr. Dillon has provided, which will be inserted into the bond. It is a condition of your bond that you cannot leave the State of Michigan except to obtain medical help or medical procedures. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any reason to leave Michigan for purposes of obtaining medical treatment?

THE DEFENDANT: I don't think so, Your Honor.

THE COURT:  All right.  Well, if you do you can do that.  But otherwise you cannot leave the State of Michigan.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  You may not possess any firearms, or any weapons.  You may not be present in any location where you know firearms or weapons to be.  Other than that, I see no other conditions unless, Mr. West, you have any to suggest.

MR. WEST:  I don't, Your Honor.  I will note for the record that the immigration authorities may have their own conditions.  I will certainly work to make them overlap with these as closely as possible.  I just note there is a whole separate bond authority that will also be implemented on that front as well.

THE COURT:  Well, I make no attempt to tell immigration what to do so they can make their own decision as to bond.  And, Mr. West, they will have to be aware of the various conditions so that he is in compliance with all of them.

I will, I will add this condition, however.  That Mr. Olajide must be in compliance with any immigration or army bond upon which he is placed.  So what that does, Mr. Olajide, is you need to be careful that the army may do nothing.  I don't know.  Immigration I understand is going to release you

on its own bond, so you'll have at least two bonds, the one I'm placing you on, the one that immigration is placing you on. But I want you to understand that if you violate any term on condition of the bond that the Immigration and Customs Enforcement places you on, that also is a violation of my bond. Do you follow me?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Mr. Dillon, do you have anything else you want to address by way of the bond?

MR. DILLON:  No, Your Honor.  Thank you.

THE COURT:  Mr. Olajide, do you think you understand all the terms and conditions I'm placing on your bond?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You're going to be given a written copy of this bond before you leave here today.  I want to make sure that you understand it's very important that you comply with all the terms and conditions of your bond.  Bad things will happen to you if you don't.  You may be arrested and brought back before me and placed in custody pending sentencing; you may be charged with criminal contempt.  Criminal contempt is a separate offense which is separately punishable by imprisonment.  A bond is an order of the Court.  Anyone who knowingly violates an order of the Court may be charged and convicted of criminal contempt.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Other bad things may happen to you as well, including remember we talked about acceptance of responsibility which reduces that offense level.

THE DEFENDANT:  Yes.

THE COURT:  Do you recall that?  Well violation of the bond may in and of itself constitute a basis to be denied acceptance of responsibility.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Any questions or concerns at this point?

THE DEFENDANT:  Yeah.  Let me talk with my attorney.

THE COURT:  Please do.

(Discussion off record in court)

MR. DILLON:  Your Honor, the address is like the general, one word, Westmoreland.

THE COURT:  Okay.  All right.  We can make that adjustment.  Thank you.  Anything else, Mr. Olajide?

THE DEFENDANT:  No.  That's it.

MR. DILLON:  Thank you.

THE COURT:  I wonder how many in this courtroom even remember the general.  At any rate we will leave it at that. All right.  I wish you well, Mr. Olajide.  Anything else we need to take up at this time, Mr. West?

MR. WEST:  Just to put on the record, Your Honor, Mr. Olajide will need to check in not only with the marshals and probation here, but also with the Homeland Security agents

to take care of the immigration bond today before leaving with his friend.

THE COURT:  Mr. Olajide, do you understand that, sir? You need to check -- before you leave this building, the marshal service will take you back to the fifth floor.  Before you leave this building, or you go anywhere else you need to check in with pretrial services, with probation, and you need to address the immigration detainer.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Go ahead.

OLUSINA OLUFEMI OLAJIDE, DEFENDANT, WAS DULY SWORN ON BOND

THE COURT:  All right.  Are we finished now, Mr. West?

MR. WEST:  That's all I have, Your Honor.

THE COURT:  Mr. Dillon.

MR. DILLON:  Yes.

THE COURT:  All right.  Thank you.  We are adjourned.

THE DEFENDANT:  Thank you, Your Honor.

THE COURT:  You're welcome.

(Proceedings concluded, 9:50 a.m.)

36

C E R T I F I C A T E

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ Kathy J. Anderson

Kathy J. Anderson, RPR, FCRR

U.S. District Court Reporter

402 Federal Building

Grand Rapids, MI   49503

**KATHY J. ANDERSON, U.S. DISTRICT COURT REPORTER**